UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FILED

97 MAR 17 AM 11: 55

RONALD C. ... TAYLOR, CLERK
U. ... DISTRICT COURT
WESTERN DISTRICT OF MICH
BY_____

SAULT STE. MARIE TRIBE OF
CHIPPEWA INDIANS; GRAND
TRAVERSE BAND OF OTTAWA AND
CHIPPEWA INDIANS; KEWEENAW BAY
INDIAN COMMUNITY; HANNAHVILLE
INDIAN COMMUNITY; BAY MILLS
INDIAN COMMUNITY; LAC VIEUX
DESERT BAND OF LAKE SUPERIOR
CHIPPEWA INDIANS; and SAGINAW
CHIPPEWA INDIAN TRIBE OF
MICHIGAN,

File No. 1:90-CV-611

Hon. Benjamin F. Gibson

                Plaintiffs,          OPINION

v.

JOHN M. ENGLER, Governor of
the State of Michigan,

                Defendant.
_____/


        The Court entered a Consent Judgment in this action on
August 20, 1993.  Presently pending before the Court is
defendant's motion to compel plaintiffs to comply with the terms
of the Consent Judgment.  The Court has considered the
presentations made at the hearing held on February 3, 1997, as
well as the briefs of the parties and amicus curiae.  For the
following reasons, the Court will grant defendant's motion in
part and deny it in part.

1

129

I.

In July of 1990, plaintiffs, Indian tribes located in the
State of Michigan[1], filed a complaint against the State[2] alleging
that it had failed to negotiate with them in good faith regarding
the formation of Tribal-State compacts as required by the Indian
Gaming Regulatory Act, 25 U.S.C. § 2710(d)(3)(A).  After three
years of litigation, the parties reached an agreement and
requested that the Court enter a Consent Judgment.

The Consent Judgment, entered on August 20, 1993, provides
for dismissal of the complaint "on the express condition that
each tribal party and the Governor shall execute a class III
gaming compact, which shall be concurred in by resolution of the
Michigan Legislature, and that those compacts are thereafter
approved by the United States Secretary of the Interior and
notice of said approvals [is] published in the Federal Register,
pursuant to 25 U.S.C. § 2710(d)(8)."  Consent Judgment, ¶¶ 3, 7,
at 2, 4.  Under the Consent Judgment, the Tribes must make semi-
annual payments to the Michigan Strategic Fund "in an amount
equal to eight percent (8%) of the net win at each casino derived

[1]The Sault Ste. Marie Tribe of Chippewa Indians, Grand
Traverse Band of Ottawa and Chippewa Indians, Keweenaw Bay Indian
Community, Hannahville Indian Community, Bay Mills Indian
Community, and Lac Vieux Desert Band of Lake Superior Chippewa
Indians filed the complaint.  The Consent Judgment added a
seventh plaintiff, the Saginaw Chippewa Indian Tribe of Michigan.
Consent Judgment, ¶ 2, at 1-2.  Plaintiffs will be referred to
collectively in this Opinion as "the Tribes".

[2]Plaintiffs later amended the complaint to name Governor
John M. Engler ("the Governor") as the defendant instead of the
State of Michigan.

2

from all class III electronic games of chance . . . ." Consent
Judgment, ¶ 4, at 2. The obligation to make the payments
continues "only so long as there is a binding class III compact
in effect between each tribe and the State . . ., and then only
so long as the tribes collectively enjoy the exclusive right to
operate electronic games of chance in the State . . . ." Consent
Judgment, ¶ 5, at 3. This Court retains jurisdiction to enforce
the Consent Judgment. Consent Judgment, ¶ 9, at 4.

On November 5, 1996, Michigan's electorate approved
"Proposal E", which provided for the adoption of an initiated
law, known as the Michigan Gaming Control and Revenue Act ("the
Act"), Mich. Comp. Laws Ann. §§ 432.201 et seq. (West 1996). The
State Board of Canvassers certified passage of the proposal on
November 25, 1996. Under Michigan's Constitution, a measure
takes effect "10 days after the official declaration of the
vote." Mich. Const. art. 2, § 9. Therefore, the effective date
of the Act was December 5, 1996.

The Act authorizes limited casino operations in Michigan.
First, the Act restricts casino gaming to cities which meet the
following criteria:

    (1)   the city has a population of at least 800,000 at
           the time a license is issued;

    (2)   the city is located within 100 miles of any other
           state or country in which gaming is permitted; and

    (3)   a majority of the voters of the [city] have
           expressed approval of casino gaming in the city.

Mich. Comp. Laws Ann. § 432.202(f) (West 1996). Currently, the
City of Detroit is the only city that meets the criteria.

Furthermore, the Act provides that no more than three licenses may be issued in any one city. Mich. Comp. Laws Ann. § 432.206(4)(b) (West 1996).

The Act creates a Michigan Gaming Control Board ("MGCB"), which has the exclusive authority to grant licenses to operate casinos and to grant other related licenses. Mich. Comp. Laws Ann. §§ 432.204(a), 432.206-.208 (West 1996). The Act defines "casino" as "a building in which gaming is conducted[,]" defines "gaming" as "to deal, operate, carry on, conduct, maintain or expose for play any game[,]" and defines "game" as "any game played with cards, dice, equipment or machine (including . . . electronic device . . .)". Accordingly, a license to operate a casino includes the right to operate electronic games of chance. Mich. Comp. Laws Ann. § 432.202(e),(k),(l) (West 1996).

On November 25 and 26, 1996, the Bay Mills Indian Community, Hannahville Indian Community, Keweenaw Bay Indian Community, Lac Vieux Desert Band of Lake Superior Chippewa Indians, and Grand Traverse Band of Ottawa Indians notified the Governor that as of the effective date of the Act they no longer would make semi-annual payments to the State under the Consent Judgment. The Tribes explain that the Consent Judgment obligated them to make the payments only as long as the Tribes enjoyed the "exclusive right to operate electronic games of chance in the State of Michigan," that the Act gave other persons or entities the right to operate such games, and that, therefore, they no longer are obligated to make the payments. The remaining plaintiffs join in

4

this position.   In response, the Governor filed the pending
Motion to Compel Compliance with Consent Judgment.   The Governor
requests that the Court order the Tribes to continue to make the
payments until another person or entity actually operates a
casino.

II.

Pursuant to the Consent Judgment, the Tribes must make semi-
annual payments to the State ". . . so long as the tribes
collectively enjoy the <u>exclusive right to operate</u> electronic
games of chance in the State of Michigan."   Consent Judgment,
¶ 5, at 3 (emphasis added).   The Court must determine whether as
a result of the passage of the Act the Tribes have lost or will
lose the "exclusive right to operate" electronic games of chance.

A.

The Court first must determine the meaning of "exclusive
right to operate" as that phrase is used in the Consent Judgment.
Consent Judgments are construed as contracts.   <u>Lorain NAACP v.
Lorain Bd. of Educ.</u>, 979 F.2d 1141, 1148 (6th Cir. 1992), <u>cert.
denied</u>, 509 U.S. 905 (1993) (citing <u>United States v. ITT
Continental Baking Co.</u>, 420 U.S. 223, 236-37 (1975)).   The Court
will apply Michigan contract law to this dispute since the
Consent Judgment was entered in Michigan.   <u>Sawyer v. Arum</u>, 690
F.2d 590, 593 (1982) (citing <u>Wells v. 10-X Mfg. Co.</u>, 609 F.2d
248, 253 (6th Cir. 1979)).

5

"The cardinal rule of contract interpretation is to ascertain the parties' intent." People v. Swirles, 218 Mich. App. 133, 135, 553 N.W.2d 357 (1996) (citing Rasheed v. Chrysler Corp., 445 Mich. 109, 127, n.28, 517 N.W.2d 19 (1994)); see also Kassin v. Arc-Mation, Inc., 94 Mich. App. 520, 524-25, 288 N.W.2d 413 (1979).  A court may not rewrite a contract for the parties. Vigil v. Badger Mut. Ins. Co., 363 Mich. 380, 383, 109 N.W.2d 793 (1961).  However, if a contract is ambiguous, a court may consider not only the language of the contract but also its subject matter and the circumstances of its formation.  Stillman v. Goldfarb, 172 Mich. App. 231, 239, 431 N.W.2d 247 (1988); Remes v. City of Holland, 147 Mich. App. 550, 555, 382 N.W.2d 819 (1985).  A contract is ambiguous when "its words may reasonably be understood in different ways."  Engle v. Zurich-American Ins. Group, 216 Mich. App. 482, 487, 549 N.W.2d 589 (1996); Raska v. Farm Bureau Mut. Ins. Co. of Michigan, 412 Mich. 355, 362, 314 N.W.2d 440 (1982).

In determining the meaning of "exclusive right to operate", the Court looks to the plain and ordinary meaning of the terms. Dillon v. DeNooyer Chevrolet Geo, 217 Mich. App. 163, 166, 550 N.W.2d 846, 848 (1996).  A "right" is defined as follows:

> A power, privilege, or immunity guaranteed under a constitution, statutes or decisional laws, or claimed as a result of long usage.

Black's Law Dictionary 919 (6th ed. 1991).

> [T]he power or privilege to which one is justly entitled.

Merriam-Webster's Collegiate Dictionary 1008 (10th ed. 1993).

6

> Something that is due to a person or governmental body
> by law, tradition, or nature.

The American Heritage Dictionary of the English Language 1553

(3d ed. 1992). "Exclusive" is "limited to possession, control,

or use by a single individual or group." Merriam-Webster's

Collegiate Dictionary 404 (10th ed. 1993); see also The American

Heritage Dictionary of the English Language 639 (3d ed. 1992).

"Exclusive right" is defined as follows:

> [A right] which only the grantee thereof can exercise,
> and from which all others are prohibited or shut out.

Black's Law Dictionary 392 (6th ed. 1991).

The Court finds that the phrase "exclusive right to operate"

is not ambiguous. As the definitions quoted above reveal, the

terms cannot "reasonably be understood in different ways."

Engle, 216 Mich. App. at 487; Raska, 412 Mich. at 362. Under the

plain and ordinary meaning of the terms, the Tribes enjoy the

"exclusive right to operate" so long as the Tribes are the only

persons or entities who have and can exercise the "right to

operate" electronic games of chance in the State or, in other

words, as long as all others are prohibited or shut out from the

"right to operate" such games.[3]

---

[3]Despite their position that the pertinent phrase is
unambiguous, the Tribes assert that the Court may consider
extrinsic evidence regarding the intended meaning of the phrase.
However, if a contract's language is clear and unambiguous, a
court must determine the parties' intent only from the contract
itself. Gaydos v. White Motor Corp., 54 Mich. App. 143, 149, 220
N.W.2d 697 (1974); see also Gortney v. Norfolk & Western Ry. Co.,
216 Mich. App. 535, 540-41, 549 N.W.2d 612 (1996). Thus, if a
term in a contract is unambiguous, the meaning of the term is a
matter of law for the court, and extrinsic evidence is not
admissible to contradict its meaning. Michigan Millers Mut. Ins.

B.

The parties agree that the Tribes' obligation to make semi-annual payments to the State ceases when they no longer enjoy the "exclusive right to operate" electronic games of chance in the State.  However, they dispute the point at which the Tribes lose the "exclusive right to operate".

The Tribes contend that the Act grants other entities or persons the right to operate electronic games of chance.  While the Tribes acknowledge that no person or entity may operate the games until receiving a license, they argue that issuance of a license is merely administrative and that other persons or entities received the right to operate on the Act's effective date.  The Tribes therefore conclude that they lost the "exclusive right to operate" on that date.

In contrast, the Governor asserts that the Act created only the possibility that in the future a person or entity other than the Tribes may operate the games.  Thus, the Governor concludes that the Tribes will not lose the "exclusive right to operate" until some other person or entity not only receives a license to operate a casino but actually "operates" electronic games of chance.

---

Co. v. Bronson Plating Co., 197 Mich. App. 482, 494, 496 N.W.2d 373, 379 (1992), aff'd, 445 Mich. 558, 519 N.W.2d 864 (1994). Accordingly, the Court will not consider the affidavits filed by the Tribes, the testimony of Steven W. Laible, or Governor Engler's brief filed with the Michigan Court of Appeals in Tiger Stadium Fan Club, Inc. v. Governor, 217 Mich. App. 439, 553 N.W.2d 7 (1996).

As discussed above, the Tribes enjoy the "exclusive right to operate" so long as the Tribes are the only persons or entities who have and can exercise the "right to operate" electronic games of chance in the State or, in other words, as long as all others are prohibited or shut out from the "right to operate" such games.  Thus, the Tribes lose the "exclusive right to operate" when some other person or entity receives and may exercise a "right to operate" the games.

The Court now must determine when under the Act another person or entity receives and may exercise a "right to operate" electronic games of chance.  The license to operate a casino includes the right to operate electronic games of chance.  Mich. Comp. Laws Ann. § 432.202(e),(k),(l) (West 1996).

"License" is defined as follows:

> Official or legal permission to do or own a specified thing.

The American Heritage Dictionary of the English Language 1038 (6th ed. 1992).

> A permission granted by competent authority to engage in a business or occupation or in an activity otherwise unlawful.

Merriam-Webster's Collegiate Dictionary 671 (10th ed. 1993).

> The permission by competent authority to do an act which, without such permission would be illegal . . . . Permission to do a particular thing, to exercise a certain privilege or to carry on a particular business or to pursue a certain occupation.

Black's Law Dictionary 634 (6th ed. 1991).  The Court finds that a person or entity, other than the Tribes, receives and may exercise a "right to operate" electronic games of chance when the

9

MGCB issues that person or entity a license to operate a casino. The person or entity receives and may exercise the "right to operate" at the time of issuance of the license, regardless of whether the person or entity chooses to exercise the right by actually beginning to operate a casino.

The Act merely gives persons or entities, other than the Tribes, the opportunity to apply for a license under which they receive and may exercise a right to operate a casino in the State. Therefore, the Court rejects the Tribes' position that they lost their "exclusive right to operate" on the Act's effective date.

The Court also rejects the Governor's conclusion that the Tribes will lose their "exclusive right to operate" only when another person or entity actually begins to operate electronic games of chance. This position is contrary to the clear language of the parties' Consent Judgment. Had the parties intended that the Tribes would be obligated to make semi-annual payments so long as they were the only <u>operators</u> of the games, the parties could have so stated. For example, the parties could have stated that the Tribes must make the payments "so long as the Tribes collectively enjoy <u>exclusive operation</u> of electronic games of chance in the State of Michigan." Instead, the parties chose to agree that the Tribes must make the payments "so long as the tribes collectively <u>enjoy the exclusive right to operate</u> electronic games of chance in the State of Michigan." Consent Judgment, ¶ 5, at 3 (emphasis added). The Court may not rewrite the parties' agreement. <u>Vigil</u>, 363 Mich. at 383.

Accordingly, the Court finds that under the plain, clear, and unambiguous language of the Consent Judgment, the Tribes lose their "exclusive right to operate" when the MGCB issues a license to operate a casino to a person or entity other than the Tribes. Thus, until the MGCB issues such a license, the Tribes must make semi-annual payments to the State pursuant to the Consent Judgment.

### III.

For the forgoing reasons, the Court finds that the Tribes must make semi-annual payments under the Consent Judgment until the MGCB issues a license to operate a casino to a person or entity other than the Tribes.  Accordingly, the Court will grant the Governor's request for an Order compelling the Tribes to continue making the payments, but deny the Governor's request that the payments continue until another person or entity actually begins to operate a casino.


_____
BENJAMIN F. GIBSON
SENIOR U.S. DISTRICT JUDGE

DATED: March *14* , 1997

MAILING RECIPIENT LIST FOR 1:90-cv-00611 (dsc)

March 17, 1997

Bruce Richard Greene, Esq.
Greene, Meyer & McElroy, PC
1007 Pearl Street
Suite 220
Boulder, CO  80302

Daniel T. Green, Esq.
Sault Ste Marie Tribe of Chippewa Indians
523 Ashmun St.
Sault Ste Marie, MI  49783

John F. Petoskey, Esq.
2331 N. West Bayshore Dr.
Suttons Bay, MI  49682

William Rastetter, Esq.
6700 French Rd.
Cedar, MI  49621

Joseph P. O'Leary, Esq.
Keweenaw Bay Indian Community Tribal Center
Old U.S. 41
Baraga, MI  49908
                    Baraga

Dawn S. Duncan, Esq.
Hannahville Indian Community
14911 N Hannahville B-1 Rd.
Wilson, MI  49896

John M. Peebles, Esq.
Monteau Guenther, Decker, Peebles, et al
12100 W Center Rd.
Suite 519, Bel Air Plaza
Omaha, NE  68144

Anthony E. Andary, Esq.
Andary & Andary, PC
519 Court St.
P.O. Box 915
Sault Ste. Marie, MI  49783
                    Chippewa

Kathryn L. Tierney, Esq.
Bay Mills Indian Community
Route 1, Box 313
Brimley, MI  49715

Edward R. Freeberg, Esq.
Lac Vieux Desert Band
Lake Superior Chippewa Indians
P.O. Box 249
Watersmeet, MI  49969

Keith D. Roberts, Esq.
Frank J. Kelley, Attorney General
Lottery & Racing Division
One Michigan Ave.
3rd Floor, P.O. Box 30217
Lansing, MI   48909

Nelson W. Westrin, Esq.
Frank J. Kelley, Attorney General
Lottery & Racing Division
One Michigan Ave.
3rd Floor, P.O. Box 30217
Lansing, MI   48909

Keith D. Roberts, Esq.
Frank J. Kelley, Attorney General
Corrections Division
One Michigan Ave.
P.O. Box 30216
Lansing, MI   48909
                    Ingham

John F. Kelly, Esq.
1869 Severn
Groose Pointe Woods, MI   48236

Francis Robert Jozwiak, Esq.
Morisset, Schlosser, Ayer & Jozwiak
801 Second Ave.
1115 Norton Bldg.
Seattle, WA   98104

Michael G. Phelan, Esq.
Morisset, Schlosser, Ayer & Jozwiak
7070 E. Broadway St.
Mt. Pleasant, MI   48858

Bill McMaster
31450 E. Bellvine
Birmingham, MI   48025

Michael J. Brown, Esq.
Dykema Gossett
125 W. Allegan
800 Michigan National Tower
Lansing, MI   48933
                    Ingham